Great Atlantic & Pacific Tea Company, Appellee, v.
Town of Bremen, Appellant.

Gen. No. 43,358.

Heard in the third division of this

court for the first district at the April term, 1945.

Opinion filed December 20, 1945. Released for publication January 8, 1946.

ARTHUR H. GROSSKOPF, of Chicago, for appellant.

ASHCRAFT & ASHCRAFT, of Chicago, for appellee; ALAN E. ASHCRAFT, JR., of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

A complaint at law filed on February 23, 1944 by the Great Atlantic & Pacific Tea Company, a corporation, against the Town of Bremen, a quasi municipal corporation in Cook county, alleges, in substance, that Otto Ziebel, supervisor and ex officio overseer of the poor of the Town of Bremen from November 1, 1939 to February 28, 1940, issued disbursing orders directed to plaintiff; that plaintiff, pursuant to such disbursing orders, furnished groceries, food, meat and other provisions to the persons named therein; that in issuing the disbursing orders the overseer of the poor acted for and on behalf of defendant; that the prices charged by plaintiff were fair and reasonable; that plaintiff made many demands upon the board of town auditors to audit and allow its claim; that the board refused to act on the demands; that on November 23, 1943 plaintiff filed in the circuit court of Cook county a petition for mandamus, praying that the board of town auditors be directed to proceed to audit and allow or reject the claim of plaintiff; that on January 31, 1944, while the petition for mandamus was pending, the board of town auditors at a special meeting unanimously rejected plaintiff's claim, and that defendant is indebted to plaintiff in the sum of $5,364.33, for which it asks judgment. Defendant filed a demand for a jury trial and a motion to dismiss the complaint. This motion was overruled.

Answering the complaint, defendant alleged that on November 1, 1939 it was indebted upon prior issued

disbursing orders in the sum of $31,000; that on that date there were no funds available to pay poor relief disbursing orders; that the total uncollected taxes theretofore levied on that date were $24,484.32; that outstanding against such uncollected taxes on that date were tax anticipation warrants in the sum of $18,300, plus interest; that in November and December 1939 and in January and February 1940 expenditures for poor relief purposes, including disbursing orders, work relief and administration were in excess of funds available for their payment and in excess of taxes levied and uncollected for the payment of such expenditures; that on March 1, 1940 defendant was indebted upon prior issued disbursing orders in the sum of $40,959.25; that on that date the poor relief account was overdrawn; that on that date there were no monies available for the payment of disbursing orders; that on that date the total uncollected taxes theretofore levied were $23,864.24; that outstanding against such uncollected taxes on that date were tax anticipation warrants in the sum of $16,300, plus interest; that the disbursing orders mentioned in plaintiff's complaint were issued in excess of taxes for that purpose levied and uncollected by defendant and in excess of funds currently available for their payment; that no consent was given by the board of town auditors to the then supervisor to issue such disbursing orders; that the supervisor as ex officio overseer of the poor did not act for and on behalf of defendant; that he did not have legal authority to issue the disbursing orders; that he exceeded his power and authority in issuing them; and that the disbursing orders were illegal, invalid and created no liability on the part of defendant by reason of sec. 20, ch. 107, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 98.22]. In reply plaintiff alleged that it had no knowledge sufficient to form a belief as to the truth of the allegations that Otto Ziebel failed to present plaintiff's statements to the board of town auditors and therefore denied such allegations.

In support of a motion for summary judgment, plaintiff filed two affidavits. An affidavit by Paul J. Sengstock stated that he was an assistant manager in plaintiff's Chicago office; that he had 15 years experience as an accountant; that he personally examined the books and records of defendant for the period commencing July 1, 1936 and ending March 31, 1940; that nowhere in such books and records did it appear that defendant was indebted upon prior issued disbursing orders in the sum of $31,000, or in any other amount; that in November 1939 defendant received from the State of Illinois $18,045 to be used exclusively for relief purposes and for the payment of expenses incurred in the administration of such relief; that according to the books and records of defendant it issued disbursing orders and cash during November 1939 in the sum of $12,761.25 for relief purposes, and further expended $1,440.96 for administration of relief, or a total of $14,202.21 for relief purposes; that in December 1939 defendant received from the State of Illinois the sum of $15,626 to be used exclusively during that month for relief purposes and for the payment of expenses incurred in the administration of such relief; that according to the books and records of defendant it issued disbursing orders and cash during December 1939 in the sum of $10,475.34 for relief purposes and expended $1,853.34 for administration of relief, or a total of $12,328.68 for relief purposes; that in January 1940 defendant received from the State of Illinois $15,899 to be used exclusively during that month for relief purposes and for the payment of expenses incurred in the administration of such relief; that according to the books and records of defendant it issued disbursing orders and cash during January 1940 in the sum of $12,738.66 for relief purposes and expended $1,466.74 for administration of relief, or a total of $14,205.40 for relief purposes; that in February 1940 defendant received from the State of Illinois $15,294 to be used

exclusively during that month for relief purposes and for the payment of expenses incurred in the administration of such relief; and that defendant had issued disbursing orders and cash during February 1940 in the sum of $13,541.74 for relief purposes and expended $1,572.51 for administration of relief, or a total of $15,114.25 for relief purposes. An affidavit by Edward S. Dauber states that he is office manager of plaintiff's Chicago office; that from November 1, 1939 to February 28, 1940 defendant furnished groceries, food, meat and other provisions to the various holders of disbursing orders issued by defendant in the sum of $5,364.33; that the prices so charged by plaintiff were fair and reasonable and the usual customary prices in the vicinity at the time.

Walter C. Dohl, in an affidavit of merits filed in behalf of defendant, stated that he was the supervisor and duly authorized agent of defendant; that he verily believed that defendant had a good defense to all of plaintiff's claim; that he personally examined the books and records of defendant; that they show that the disbursing orders described in plaintiff's complaint and in its affidavit for summary judgment were issued in excess of taxes for that purpose levied and uncollected by defendant and in excess of funds currently available for their payment; that no consent was given by the board of town auditors to the then supervisor to issue such disbursing orders; that on November 1, 1939 defendant was indebted upon prior disbursing orders in the sum of $31,000; that on that date there were no funds available to pay poor relief disbursing orders; that the total uncollected taxes theretofore levied on that date were $24,484.32; that outstanding against the uncollected taxes on that date were tax anticipation warrants in the sum of $18,300, plus interest; that in November and December 1939 and January and February 1940 expenditures for poor relief purposes, including disbursing orders, work relief and administra-

tion, were in excess of funds available for their payment and in excess of taxes levied and uncollected for the payment of such expenditures; that on March 1, 1940 defendant was indebted upon prior issued disbursing orders in the sum of $40,959.25; that on that date the poor relief account of defendant was overdrawn and there were no monies available for the payment of disbursing orders; that on that date the total uncollected taxes theretofore levied by defendant were $23,864.24; that outstanding against such uncollected taxes on that date were tax anticipation warrants in the sum of $16,300, plus interest; that at the time of the issuance of the orders there was in full force and effect sec. 20, ch. 107, Ill. Rev. Stat. 1943; that he personally examined the books and records of defendant; that they showed that during November 1939 defendant received from the State of Illinois $18,045 to be used during that month for relief purposes, including the cost incurred in the administration of such relief; that defendant issued disbursing orders during that month in the sum of $12,761.25 for relief purposes and expended $1,440.96 for costs and expenses of administration of relief, and $6,658.80 for work relief purposes, making a total of $20,861.01 expended by defendant for relief purposes; that the books and records of defendant showed that during December 1939 it received from the State $15,626 to be used during that month for relief purposes, including the cost incurred in the administration of such relief; that defendant issued disbursing orders during that month in the sum of $10,475.34, expended $1,853.34 for costs and expenses of administration of relief, and $6,308.23 in work for relief purposes, making a total of $18,636.91 expended for relief purposes; that the books and records of defendant show that during January 1940 it received from the State $15,899 to be used during that month for relief purposes, including the cost incurred in the administration of such relief; that it issued disbursing

orders during that month in the sum of $12,738.66 and expended $1,466.74 for costs and expenses of administration of relief; that defendant expended during that time the sum of $3,424 in work relief for relief purposes, making a total of $17,629.40 expended by it for relief purposes; that during February 1940 defendant received from the State $15,294 to be used during that month for relief purposes, including the cost incurred in the administration of such relief; that it issued disbursing orders during that time in the sum of $13,541.74 for relief purposes and expended $1,572.51 for costs and expenses of administration of relief; that defendant expended $837.32 in work relief for relief purposes, making a total of. $15,952.07 expended by it for relief purposes during that month.

Plaintiff's motion for summary judgment in the sum of $5,364.33 was sustained and defendant appeals. Plaintiff's theory is that the affidavits filed by it in support of its motion are sufficient to sustain the judgment; that defendant's affidavit of merits is insufficient; that such affidavit discloses that there is no material issue to be tried; that the entire record is not before the court; and that it will be presumed that sufficient evidence was submitted to justify the entry of the judgment. Defendant's theory is that plaintiff is not entitled to recover a summary judgment because of the insufficiency of its affidavits and because the record presents defenses which should be submitted to a jury.

In each town the supervisor, town clerk and justices of the peace of the town constitute a board of auditors. The supervisor is ex officio overseer of the poor. The board of auditors is required to meet at the town clerk's office for the purpose of examining and auditing the town accounts, at least semiannually, and may meet at such other times as they may determine. Upon the request of the supervisor or of any two members of the board, the town clerk is required to call a

meeting at the time requested. The board of auditors is required to examine the accounts of the overseer of the poor (where the town sustains its own poor) and the commissioners of highways of such town for all monies received and distributed by them, and also to examine and audit all charges and claims against the town. The accounts so audited and those rejected, if any, are required to be delivered with a certificate of the auditors, or a majority of them, to the town clerk, to be by him kept on file for the inspection of any of the inhabitants of the town. Sec. 20, ch. 107, Ill. Rev. Stat. 1945, reads:

"The overseer of the poor shall receive and pay out all moneys raised by taxes or allocated by the State for support of paupers and shall have the care and oversight of all such persons in their municipality, town or precinct as are unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, and as are not supported by their relatives or at the county home, and shall see that they are suitably relieved, supported and employed, subject to such restrictions and regulations as may be prescribed by the . . . board of town auditors. . . . No indebtedness shall be incurred by the overseers of the poor in excess of taxes for this purpose levied and uncollected or for the payment of which funds are not currently available without the consent of the . . . board of town auditors . . . ."

The final sentence of sec. 20 was added at the first special session of the legislature in 1938. Prior to that amendment the overseers of the poor were obliged to relieve the wants of paupers within the town and if no funds were available, they were obliged to pledge the credit of the town. *Town of Kankakee v. McGrew,* 178 Ill. 74.

██ Relying on the requirements of sec. 20 above quoted, defendant insists that there remain issues of fact which should be submitted to a trial by jury and

that the court, in entering a summary judgment, committed error. The purpose of the summary judgment procedure is not to try an issue of fact, but rather to determine whether there is an issue of fact. The matter is necessarily inquisitorial. If there is a material issue of fact, it must be submitted to the jury. The right of the moving party to a judgment should be free from doubt. *Bertlee Co., Inc. v. Illinois Publishing & Printing Co.*, 320 Ill. App. 490. In *Shirley v. Ellis Drier Co.*, 379 Ill. 105, the court said (110):

"If there is anything left to go to the jury the motion for summary judgment is denied. If what is contained in the affidavits would have constituted all of the evidence before the court and upon such evidence, there would be nothing left to go to the jury, and the court would be required to direct a verdict, then a summary judgment will be entered."

Defendant maintains that the pleadings and the affidavits show a dispute of fact as to whether the disbursing orders issued by the overseer of the poor were in excess of taxes for that purpose levied and uncollected, or for the payment of which funds were not currently available and were without the consent of the board of town auditors, and that if upon a trial it developed that the disbursing orders were issued by the overseer in violation of sec. 20, defendant would be entitled to have judgment in its favor. Defendant assails the affidavit of Paul Sengstock because it purports to give his findings according to the books and records of defendant without identifying them in any way and without presenting any portions of them to the court as exhibits, and maintains that Mr. Sengstock's affidavit is entirely insufficient and without any probative value. The affidavit states that affiant is the assistant manager of plaintiff; that he had 15 years' experience as an accountant; and that he personally examined the books and records of defendant for the period from July 1, 1936 and ending March 1, 1940. He then states

the ultimate facts concerning such examination. In the instant case the books and records are in the possession of defendant. Defendant did not move to strike plaintiff's affidavit to which he now objects. In fact, defendant filed an affidavit of merits based on the same type of evidence to which it now objects. We are of the opinion that under the circumstances plaintiff's affidavits were sufficient.

We turn to a consideration of defendant's point that the disbursing orders for poor relief which plaintiff filled, were in excess of taxes for this purpose levied and uncollected, or for the payment of which funds were not currently available. Defendant states that its affidavit of merits shows that during the entire period from November 1, 1939 to February 28, 1940, in which the disbursing orders were issued, its total income for poor relief purposes including State aid, was always less than the indebtedness that the then supervisor incurred by the issuance of disbursing orders, and that the board of town auditors never consented to the issuance of the disbursing orders. The assertion that the food was delivered by plaintiff to the persons named in the disbursing orders and that the prices charged were reasonable, is not controverted by defendant. It became incumbent upon defendant by the affidavit of merits presented in its behalf, to show that it had a good defense so that there was an issue of fact to be determined by a jury. Defendant knew when the disbursing orders were issued and when the groceries and meats were delivered. If, at the time of the issuance of a disbursal order and the delivery of the meats and groceries thereunder the indebtedness thereby attempted to be created was not in excess of taxes for the purpose levied and uncollected, or for the payment of which funds were currently available, defendant should pay for the food so ordered. During the four months in which deliveries were made, defendant received $64,864 from the State to be used during that time.

During this period it issued disbursing orders in the aggregate amount of $49,516.99. Defendant then adds to the aggregate amount of disbursing orders issued, the sum of $23,562.40 expended for administration and work relief, making a total "expended" of $73,079.39. Having "expended" $73,079.39 and having "currently available" only $63,864, defendant asserts that plaintiff is not entitled to be reimbursed for the groceries and meats delivered pursuant to disbursing orders issued during the four month period. In its affidavit of merits defendant makes no attempt to show that each or any of the disbursing orders issued by it and honored by plaintiff was issued and honored at a time when in any of the four months the money "currently available" for that month had been exhausted. We thus have a situation where the supervisor, having $64,864 available, attempted to obligate the town during the four month period to the extent of $73,079.39. It was incumbent upon defendant to make a showing that each disbursing order issued by the overseer and honored by plaintiff was issued at a time in each month subsequent to the time the overseer had incurred obligations to the extent of funds then available. In our opinion defendant's affidavit does not make this showing. There is no statement in the affidavit as to when the disbursing orders were issued, or as to the condition of the township treasury at the time. Conceding every presumption to defendant, the affidavit shows that disbursing orders aggregating $41,301.60, out of a total of $49,516.99, were valid. There is no presumption that the disbursing orders honored by plaintiff were not included in the $43,301.60 of validly issued orders.

▮ Sec. 20 does not state how the consent of the board of town auditors to the incurring of indebtedness by the overseer in excess of taxes for that purpose levied and uncollected, or for the payment of which funds are not currently available, shall be shown. A careful reading of the record, however, satisfies us that

the board of town auditors consented to the incurring of the indebtedness for which plaintiff was given judgment. We find that defendant failed to present in its affidavit statements of ultimate facts showing that there was an issue to be tried by a jury. Therefore, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

KILEY, P. J., and LEWE, J., concur.